# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FORTIS ADVISORS LLC, et al.,<br><br>                    Plaintiffs,<br><br>v.<br><br>FISHAWACK MEDICAL COMMUNICATIONS LTD, et al.,<br><br>                    Defendants. | Case No.: 20cv607-LAB-AGS<br><br>**ORDER:**<br><br>**1) GRANTING MOTION FOR REMAND [Dkt. 12]; AND**<br><br>**2) DENYING MOTIONS TO DISMISS [Dkt. 5, 6]** |

California-citizen Plaintiffs Delisa Discar and Fortis Advisors LLC filed a complaint in California state court asserting California state law claims against four defendants. Three—Fishawack Medical Communications Ltd., Fishawack Creative Ltd., and Oliver Dennis—aren't California citizens, but the fourth, Carling Communications, Inc., is. With Carling in the case, the Court can't exercise diversity jurisdiction. Nevertheless, Defendants removed the action to this Court under 28 U.S.C. § 1441, contending that the Court should disregard Carling's citizenship because Plaintiffs fraudulently joined Carling to destroy diversity.

The bar to establish fraudulent joinder is a high one: A removing party must show, under settled state law, that there is "no possibility that [the plaintiffs] could demonstrate a viable claim" against the non-diverse defendant. *Grancare, LLC v. Thrower*, 889 F.3d 543, 548-49 (9th Cir. 2018). Defendants can't establish that a

viable claim is impossible by arguing that Plaintiffs' allegations are vague, and they can't show that a conclusion is obvious under settled state law by relying on tenuous analogies, never adopted by California courts, to inapplicable areas of law.

The Court can't assert diversity jurisdiction over a case that includes a potentially viable claim against a non-diverse defendant. Plaintiffs' Motion for Remand, (Dkt. 12), is **GRANTED** and Defendants' motions to dismiss, (Dkt. 5 and 6), are **DENIED WITHOUT PREJUDICE** for lack of jurisdiction.

## BACKGROUND

The Court accepts the Complaint's factual allegations as true for the purposes of determining the possibility of a viable claim. Plaintiffs formerly controlled Carling, but agreed to sell it to the Fishawack Defendants, with Discar remaining as Carling's president after the sale. (Dkt. 1-3 ¶¶ 34-39.) As part of the payment, the Fishawack Defendants agreed to pay Plaintiffs an "Earn-out Payment" based on Carling's fee revenue during a one-year period beginning on April 1, 2018 (the "Calculation Period"). (*Id.* ¶¶ 44-46.) Those Defendants further agreed not to "take any actions in bad faith for the purpose of avoiding or reducing the Earn-out Payment." *Id.* ¶ 46. Upon acquisition, Carling became a subsidiary of one of the Fishawack entities. (*Id.* ¶ 17.)

In February 2018, shortly before the Calculation Period began, Discar was placed on indefinite leave from her position as Carling's president. (*Id.* ¶ 66.) She was terminated in May 2018. (*Id.* ¶ 70.) During the Calculation Period, Carling's activities were directed away from revenue-generating activities and the company lost over half its accounts. (*Id.* ¶¶ 50, 70-75.) The accompanying loss of over 35% of Carling's revenue substantially reduced the Earn-out Payment to Plaintiffs. (*Id.* ¶¶ 75-76, 81-87.)

Plaintiffs allege that the Fishawack Defendants didn't intend, at the time of contracting, to honor their agreement not to "take any actions in bad faith for the

purpose of avoiding or reducing the Earn-out Payment." (*Id.* ¶ 46.) On this basis, they assert claims for fraud, conversion, and securities fraud against the Fishawack entities and Dennis. Plaintiffs allege that Carling conspired in and aided and abetted the other Defendants' torts through its adverse employment actions and its redirection of its efforts away from the revenue generation that determined Plaintiffs' compensation. (*See id.* ¶¶ 127-136.)

# ANALYSIS

## I. Legal Standard

"When a plaintiff files in state court a civil action over which the federal district courts would have original jurisdiction based on diversity of citizenship, the . . . defendants may remove the action to federal court." *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996); *see* 28 U.S.C. § 1441. Because the exercise of diversity jurisdiction necessarily involves addressing matters that "intrinsically belong[] to the state courts," the party invoking federal jurisdiction bears the burden of demonstrating that removal was proper. *Indianapolis v. Chase Nat'l Bank*, 314 U.S. 63, 76 (1941); *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). The removal statutes are strictly construed, with doubts about the propriety of removal resolved in favor of remand. *Id.*

Federal courts can't exercise diversity jurisdiction where "a single plaintiff [is] from the same State as a single defendant." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 553 (2005). But a plaintiff can't destroy diversity by fraudulently joining a "sham" defendant. *McCabe v. Gen'l Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987). The burden of overcoming both the "strong presumption against removal jurisdiction" and the "general presumption against fraudulent joinder" is a heavy one. *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1046 (9th Cir. 2009).

The Court can find fraudulent joinder here only upon the removing party's showing that there is "no possibility that the plaintiff could demonstrate a viable

claim" against the non-diverse defendant. *Grancare*, 889 F.3d at 548-49 (9th Cir. 2018).¹ That impossibility must be "obvious according to the settled rules of the state." *Id.* at 549 (quoting *McCabe*, 811 F.2d at 1339 (9th Cir. 1987)). If the removing party's argument relies on ambiguous or unsettled questions of law, the claim's non-viability isn't obvious, so any such questions must be resolved against the removing party. *See id.*; *see also Macey v. Allstate Property and Cas. Ins. Co.*, 220 F. Supp. 2d 1116, 1117-18 (N.D. Cal. Sept. 11, 2002) (citing *Good v. Prudential*, 5 F. Supp. 2d 804, 807 (N.D. Cal. 1998)).

Demonstrating "no possibility that the plaintiff could demonstrate a viable claim" is a higher bar than showing that the complaint fails to state a claim under Fed. R. Civ. P. 12(b)(6). "Arguments [that] go to the sufficiency of the complaint . . . do not establish fraudulent joinder." *Grancare,* 889 F.3d at 549, 552. Nor does the plaintiff need to respond to such arguments by proposing specific amendments—the burden remains on the removing party to demonstrate that the plaintiff couldn't cure the deficiency by amendment. *See id.* at 550 ("[T]he district court must consider . . . whether a deficiency in the complaint can *possibly* be cured by granting the plaintiff leave to amend.") (emphasis added), 552 (setting aside arguments that plaintiff did not plead claims with sufficient particularity because they "go to the sufficiency of the complaint, rather than to the possible viability" of the claims); *see also Padilla v. AT&T Corp.*, 697 F.Supp.2d 1156 (C.D. Cal. 2009).

**II.  Application**

Defendants, as the removing parties, bear the burden here. They attack Carling's joinder on three bases:

1) The Complaint's factual allegations against Carling are vague, failing to

---

¹ A defendant may be fraudulently joined if the jurisdictional facts alleged against it are false, too, but Defendants don't contest Carling's California citizenship.

identify specific individuals and acts, (*see* Dkt. 16 at 14-19);

2) The torts underlying the conspiracy and aiding and abetting claims against Carling aren't viable, (*see id.* at 25-29); and

3) Carling couldn't have conspired with or aided and abetted the other Defendants, because:

    a) Carling is a subsidiary of one of the Defendants that allegedly committed the fraud; and

    b) Carling was under Plaintiffs' control at the time Plaintiffs relied on the alleged misrepresentations. (*See id.* at 19-24.)

Allegations that would fail to state a claim only because they aren't sufficiently specific can be addressed by amendment, so the first of these three arguments can't establish the impossibility of a viable claim against Carling. *See Grancare*, 889 F.3d at 552; *see also United States v. Corinthian Colleges*, 655 F.3d 984, 995 (2011) (amendment should be permitted where pleading's vague allegations could support a claim if made more specific).

Because Plaintiffs need only one potentially viable claim against Carling, the Court analyzes the claim for conspiracy to commit fraud. Neither of Defendants' remaining two arguments establish the non-viability of that claim, so Carling is a properly joined defendant whose California citizenship destroys diversity. The Court lacks jurisdiction, so it must remand the case to state court.

**A. The existence of a contract doesn't obviously bar a claim for fraud under California law.**

A claim for conspiracy to commit fraud requires, first, an underlying fraud, and second, a conspiracy. Defendants argue that a breach of duties memorialized in contract can't constitute fraud. They acknowledge an exception, though: Conduct that breaches the contract but "is also a [breach] of a legal duty" can establish a fraud claim. *Id.* (quoting *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 515 (1994)). Defendants haven't shown that the

exception doesn't apply here, so the contract doesn't obviously bar Plaintiffs' fraud claim against Carling.

California law requires a contracting party to refrain from misrepresenting, at the time the contract is formed, its intention to perform the duties imposed by that contract. Cal. Civ. Code § 1572(4) (imposing statutory duty on contracting parties to refrain from making "promise without any intention of performing it"). This duty is statutory and independent of the contract, so it can support a claim for fraud despite the general rule that conduct that breaches a contract can't constitute fraud. *See, e.g., Lazar v. Sup. Ct.*, 12 Cal. 4th 631, 638-39 (1996) (intentional misrepresentations can establish claim for fraud regardless of whether those misrepresentations are part of contract).

Plaintiffs allege that Defendants breached this duty by promising not to "take any actions in bad faith for the purpose of avoiding or reducing the [revenue-based] Earn-Out Payment" while intending to do just that. (*See* Dkt. 1-3 ¶¶ 82, 41-42, 47-70, 107.) Regardless of whether these allegations suffice to meet the applicable pleading standard, Plaintiffs allege that Defendants breached a legal duty independent of the parties' contract. Defendants fail to show that a fraud claim based on such a breach is obviously barred by California law.

### B. Plaintiffs have a potentially viable claim that Carling joined a conspiracy to commit fraud.

Even if Plaintiffs' fraud claims are viable, Defendants argue, Carling can't be liable for conspiracy to commit fraud. First, they contend that a subsidiary can't be liable for conspiring with its parent. Second, they assert that an entity that Plaintiffs controlled at the time of alleged misrepresentations couldn't have joined a conspiracy to engage in the fraud based on those misrepresentations. These conclusions aren't obvious under settled California law.

/ / /

/ / /

*a. California law doesn't obviously foreclose liability for a parent-subsidiary conspiracy.*

Defendants argue that Carling can't conspire with the Fishawack entities as a matter of law, but they don't offer any direct authority for this proposition. Instead, they resort to analogy, first between the parent-subsidiary relationship and a corporate principal's relationship with his agents, and second between civil conspiracy and antitrust conspiracy. Neither analogy is apt.

In California, as "agents and employees of a corporation cannot conspire with their corporate principal or employer where they act in their official capacities on behalf of the corporation and not as individuals for their individual advantage." *Black v. Bank of America*, 30 Cal. App. 4th 1, 2 (1994). Courts' refusal to permit the corporate principal's relationship with its employees rests on two propositions. First, conspiracy takes two: a person can't conspire with himself. *Id.* at 6. And second, "a corporation is . . . a legal fiction that cannot act at all except through its employees and agents." *Id.* The corporation and its employee together make one, then, not enough to form a conspiracy. *Id.*

Parents and their subsidiaries, on the other hand, are separate entities absent an abuse of the corporate form. *See Turman v. Superior Court of Orange County*, 17 Cal, App. 5th, 969, 981 (2017); *see also United States v. Bestfoods*, 524 U.S. 51, 61 (1998) ("It is a general principle of corporate law deeply 'ingrained in our economic and legal systems' that a parent corporation . . . is not liable for the acts of its subsidiaries"). The rule that a conspiracy requires two conspirators can't establish that a presumptively separate parent and subsidiary are incapable of conspiracy.

Defendants' appeal to antitrust law, specifically *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752 (1984), is similarly misguided. Divorced from its context, the *Copperweld* Court's statement that a parent company "and its wholly owned subsidiary . . . are incapable of conspiring with each other" appears to support

their position. *Id.* at 777. But the Court in the same sentence limited that rule's application to claims for antitrust conspiracy under § 1 of the Sherman Act, a statute that forbids agreements "in restraint of trade." *Id.* ("[The defendant] and its wholly owned subsidiary . . . are incapable of conspiring with each other for purposes of § 1 of the Sherman Act."); *see also id.* at 771 (parents and subsidiaries "must be viewed as . . . a single enterprise *for purposes of § 1 of the Sherman Act*"); 15 U.S.C. § 1.  No California court appears to have applied *Copperweld* outside the antitrust context, and other courts have declined the invitation to do so. *See, e.g., Shared Communications Svcs. of 1800-80 KFL Blvd., Inc. v. Bell Atlantic Props. Inc.*, 692 A.2d 570, 572-74 (Pa. 1997) (declining to extend *Copperweld* to cover civil conspiracy between parent and subsidiary under Pennsylvania law); *Borden, Inc. v. Spoor Behrins Campbell & Young, Inc.*, 828 F. Supp. 216, 223-24 (S.D.N.Y. 1993) (*Copperweld* doesn't apply to non-antitrust conspiracies under federal or New York law).

Neither *Copperweld* nor agency law make it obvious as a matter of settled California law that a subsidiary can't be liable for conspiring in its parent's tort, so neither justifies a conclusion that Plaintiffs fraudulently joined Carling via a non-viable conspiracy claim.

>   *b. California law may permit claims for conspiracy against parties who joined a fraud after a plaintiff relied on a misrepresentation but before it suffered harm.*

Defendants next argue that Carling couldn't have conspired in fraud because the alleged fraudulent misrepresentations and Plaintiffs' reliance on them occurred while Plaintiffs themselves controlled Carling. The crux of the argument is that a party can't join a completed fraud, and Carling couldn't have joined a conspiracy against Plaintiffs while Plaintiffs controlled Carling. But neither the fraud nor the conspiracy was "complete with the sale of Carling" or at the time of the misrepresentations, as Defendants would have it. (Dkt. 16 at 20.)

Conspiracy liability lies for "acts in furtherance of the [conspirators'] common design." *Doctors' Co. v. Superior Court*, 49 Cal.3d 39, 44 (1989). A conspiracy is complete, and thus closed to new conspirators, "when [that] common design . . . is fully accomplished," timing which "depends on the facts and circumstances of each case, and on the nature and purpose of the conspiracy." *de Vries v. Brumback*, 53 Cal.2d 643, 647 (1960). Defendants' alleged common design here wasn't simply to induce the sale of Carling, but to secure an artificially low price by reducing the Earn-out Payment. That payment was based on Carling's revenues over the post-sale Calculation Period, revenues that Carling allegedly reduced in furtherance of the scheme. The common design wasn't complete until the Earn-out Payment was reduced, and the Earn-out Payment wasn't reduced until Carling acted.

Discar's position as Carling's president for a period post-closing doesn't mean that Carling's actions were attributable to her. Plaintiffs allege that Discar departed involuntarily in February 2018, before the Calculation Period began and before several Carling acts that allegedly reduced its revenue. (*See* Dkt. 1-3 ¶¶ 66-73, 75.) Moreover, Plaintiffs allege that Defendants undermined Discar's ability to steer Carling prior to placing her on leave. (*See id.* ¶¶ 49-54.) Defendants don't provide any basis in California law for attributing Carling's acts to Discar under these circumstances.

Defendants fail to demonstrate either that Carling is incapable of conspiring with its parent or that Carling's alleged acts came after the conspiracy's common design was fully accomplished. Plaintiffs' claim against Carling for conspiracy to commit promissory fraud isn't obviously foreclosed by settled California law.

## CONCLUSION

The Court can assert jurisdiction over this case only if Defendants show that there is *no possibility* that Plaintiffs could demonstrate a viable claim against the lone non-diverse defendant, Carling. They haven't met this heavy burden, and so

jurisdiction is lacking. The Motion for Remand, (Dkt. 12), is **GRANTED** and the matter is **REMANDED** to the Superior Court of the State of California, County of San Diego.

The pending motions to dismiss, (Dkt. 5 and 6), are **DENIED WITHOUT PREJUDICE** for lack of jurisdiction. The Clerk is directed to close the docket.

**IT IS SO ORDERED**.

Dated: January 29, 2021

*Larry A. Burns*
Hon. Larry Alan Burns
United States District Judge